UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CORTINA C.,[1]

                              Plaintiff,          Case # 24-CV-972-FPG

v.                                                     DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## INTRODUCTION

Plaintiff Cortina C. brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 14. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In January 2022, Plaintiff applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 226. She alleged disability since January 2022 due to bipolar disorder, anxiety disorder, depression, Type II diabetes, high blood pressure, and a partially deflated left lung. Tr.

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF Nos. 6, 7.

120. In February 2024, Administrative Law Judge Ellen P. Bush ("the ALJ") issued a decision finding that Plaintiff is not disabled. Tr. 11-22. In August 2024, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

**LEGAL STANDARD**

**I.     District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

**II.    Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the

2

ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

**DISCUSSION**

I. **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 2022, her application date. Tr. 13. At step two, the ALJ found that Plaintiff suffered from severe impairments of obesity, asthma, COPD, obstructive sleep apnea, depressive disorder, anxiety disorder, and post-traumatic stress disorder ("PTSD"). Tr. 14. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. *Id.*

Next, the ALJ determined that Plaintiff had the RFC to perform a reduced range of light work with some exertional, environmental and social limitations. Tr. 16. At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 21. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 21-22. The ALJ therefore found that Plaintiff was not disabled. Tr. 22.

II. **Analysis**

Plaintiff takes issue with the ALJ's decision on the basis that the RFC determination was not supported by substantial evidence (ECF No. 10-1 at 15-25), that the ALJ improperly relied on Plaintiff's ability to care for her children (*id.* at 22-25), and that the ALJ failed to explain the supportability and consistency prongs for two of the medical opinions. *Id.* at 25-29. For the reasons below, this Court disagrees.

i. **Substantial Evidence**

Plaintiff, throughout her brief, cites to evidence she believes supports a more restrictive RFC than the ALJ's finding of light work with certain exceptions. Plaintiff argues that remand is warranted because the ALJ: (1) "had insufficient discussion" about the assistance that Plaintiff

relied on (ECF 10-1 at 17-19); (2) erred when she "failed to find [nurse practitioner Brown-Young's] opinion persuasive" (*id.* at 15); (3) erred by mentioning only one instance of self-harm despite there being more than one instance of self-harm and self-harm urges in the record (*id.* at 19); (4) incorrectly asserted that Plaintiff did not need a higher level of care (*id.* at 20); (5) mischaracterized the record when she wrote that the record does not establish that Plaintiff engages in antisocial or inappropriate behavior (*id.* at 20-21); (6) erred by relying on Plaintiff's ability to care for her children as an indication that she can work. *Id.* at 22-23.

So long as the "the evidence of record permits [the Court] to glean the rationale of an ALJ's decision," an ALJ is not required to "mention[] every item of testimony presented to [her] or [] explain[] why he considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Mordean L. v. Comm'r of Soc. Sec.*, No. 19-CV-277-FPG, 2020 WL 6886557 at *5 (W.D.N.Y. Nov. 24, 2020) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted)). The mere fact that Plaintiff can identify other evidence to support a different conclusion does not entitle her to relief. *Emery S. v. Comm'r of Soc. Sec.*, No. 20-CV-662-FPG, 2021 WL 2592363, at *4 (W.D.N.Y. June 24, 2021).

a. **Reliance on Assistance**

In her brief, Plaintiff cites to Plaintiff's reliance on her roommate, Ms. Noody, in support of a more restrictive RFC than the ALJ's conclusion. ECF No. 10-1 at 17-19. Specifically, Plaintiff argues that the ALJ improperly "discounted" that Ms. Noody serves as Plaintiff's power of attorney and assists Plaintiff with her finances, meetings, appointment reminders, the mail,

5

understanding family court, shopping, and hygiene. *Id.* at 17. While Plaintiff is correct that there is a variety of evidence substantiating how Plaintiff appeared to have benefitted from Ms. Noody's assistance, the Court finds that the ALJ properly considered such evidence. The ALJ acknowledged Plaintiff's testimony regarding her "difficulty [in] functioning in public" and that she "*receives assistance* for activities of daily living including shopping, finances, reading mail, and ensuring that [she] maintains her hygiene." Tr. 17 (emphasis added). However, in supporting her finding that Plaintiff could perform light work with some limitations, the ALJ noted that Plaintiff had the "ability to care for her family," and took part in "conservative treatment for both physical and mental health issues" Tr. 21. Additionally, the ALJ referenced treatment notes that described "intact functioning," mental status examinations which "consistently indicate that [Plaintiff] is fully oriented and cognitively intact," and physical examination reports which showed that Plaintiff "retains intact strength, mobility, and motor skills." Tr. 17, 19. Therefore, the Court concludes that substantial evidence supports the ALJ's RFC determination. The fact that Plaintiff can point to evidence that supports a different conclusion does not entitle her to relief. *See Emery S.*, 2021 WL 2592363 at *4.

    **b. Nurse Practitioner Brown-Young's Opinion**

Similarly, Plaintiff faults the ALJ in failing to find nurse practitioner Brown-Young's opinion to be "persuasive." ECF No. 10-1 at 15. Plaintiff argues that had the ALJ found Brown-Young's opinion to be persuasive, then the ALJ would have "necessarily" determined Plaintiff met Listings 12.04, 12.06, 12.15, and thus, would have concluded that Plaintiff was disabled. *Id.* However, the ALJ explained why she did not find Brown-Young's opinion to be persuasive, writing that Brown-Young's assessment of Plaintiff's various functional capabilities was "vague and not presented in clear functional terms." Tr. 20. Additionally, the ALJ found that Brown-

6

Young's suggestions that Plaintiff suffered from "marked difficulties in social functioning" and an inability to make simple decisions were not supported by Brown-Young's mental status examination reports and treatment notes. *Id.* For example, the ALJ referenced Brown-Young's reports describing Plaintiff as having a generally stable mood, intact cognitive functioning, and social difficulties limited to acute episodes of conflict rather than generalized abnormalities of behavior or social anxiety. *Id.* Once again, the fact that Plaintiff can point to other evidence that supports a different conclusion does not entitle her to relief. *See Emery S.*, 2021 WL 2592363 at *4. Thus, the Court concludes that the ALJ's determination that Brown-Young's opinion lacked persuasiveness was supported by substantial evidence.

  c. **Instances of Self-Harm**

  Next, Plaintiff, without citing any case law, faults the ALJ for mentioning only one instance of Plaintiff's self-harm despite Plaintiff having had other instances of self-harm and self-harm urges. ECF No. 10-1 at 19-20. Plaintiff is correct that the ALJ only explicitly refers to one episode of Plaintiff's self-harm. Tr. 16 (explaining that Plaintiff experienced "[an] episode of self-harm following a combination of stressful circumstances including her son attempting to set fire to a bedroom and an assault by a peer"). However, the ALJ also explained that despite Plaintiff's experience with acute stressors and her reports in feeling overwhelmed, Plaintiff's mental status would remain intact and she would utilize various coping skills, from journaling to crafting. Tr. 19-20. This is enough for the Court to glean that the ALJ considered Plaintiff's mental health, including instances of self-harm, but ultimately concluded that the RFC was sufficient to address these symptoms. An ALJ is not required to "mention[] every item of testimony presented to h[er] or [] explain[] why [s]he considered particular evidence unpersuasive or insufficient to lead h[er]

to a conclusion of disability." *Mongeur,* 722 F.2d, 1040. As such, the Court finds that the ALJ properly considered Plaintiff's self-harm and supported the RFC finding with substantial evidence.

### d. Level of Care

Plaintiff argues, again without citing any case law, that she requires a higher level of care than the ALJ determined. ECF No. 10-1 at 20. Plaintiff claims that because she participates in group therapy four days per week, she would be absent from work more than one day per month, which is the number of absences the vocational expert opined employers could tolerate. *Id.* Plaintiff further argues that the ALJ mischaracterized the record when she wrote that it "does not establish that the claimant engages in antisocial or inappropriate behavior." *Id.* Specifically, Plaintiff points to evidence in the record that she had made inflammatory statements at group therapy. *Id.* However, in her decision, the ALJ discusses Plaintiff's ability to adapt and manage herself, supporting her conclusion with substantial evidence. Tr. 20. For example, the ALJ discusses that the record does not establish Plaintiff's inability to perform personal care. *Id.* Further, the ALJ explains that Plaintiff's mental health treatment "has been conservative without need for intensive treatment[,] such as inpatient admission, partial hospitalization, or emergency management of crisis or panic." *Id.* The ALJ adds that "Plaintiff has been able to maintain coping skills and adapt . . . ." *Id.* It "is not the function of this Court to reweigh the evidence—so long as the ALJ's conclusions are supported by substantial evidence, as they are here, they must be affirmed." *Verne W. v. Comm'r of Soc. Sec.*, 23-CV-6277-FPG, 2023 WL 8644415, at *4 (W.D.N.Y. Dec. 14, 2023) (internal quotation marks omitted). Because the ALJ's finding regarding Plaintiff's level of care was supported by substantial evidence, the Court is not persuaded by this argument.

### e. Caring for Children

Plaintiff argues that remand is warranted because the ALJ erred by relying on Plaintiff's ability to take care of her children as an indication that Plaintiff is not disabled. ECF No. 10-1 at 21-25. The Court disagrees. While the ALJ acknowledged Plaintiff's statements to nurse practitioner Brown-Young in which she described "struggling with the demands of caring for four high needs children," the ALJ also discussed Brown-Young's treatment notes that showed that Plaintiff's "attention, concentration, and other cognitive abilities remained intact." Tr. 19. Additionally, the ALJ acknowledged Brown-Young's treatment notes which showed that even when Plaintiff would feel overwhelmed or irritable, she would not then "decompensate" or experience "significant deficits in [her] concentration or attention." *Id.*

Courts have upheld an ALJ's reliance on a plaintiff's ability to take care of others in making the RFC determination. *See Little v. Comm'r of Soc. Sec.*, No. 1:19-CV-0897 (WBC), 2020 WL 6205691, at *8 (W.D.N.Y. Oct. 22, 2020); *see also Amy T. v. Comm'r of Soc. Sec.*, 20-CV-0910 (DEP), 2021 WL 6063057, at *7 (N.D.N.Y. Dec. 22, 2021) (rejecting the plaintiff's argument that the ALJ should not have relied on the plaintiff's childcare activity because "[t]he finding regarding plaintiff's daily activities was also not made in isolation, but rather in combination with consideration of the medical evidence and reports plaintiff made to her treatment providers . . . ."). Further, it "is not the function of this Court to reweigh the evidence—so long as the ALJ's conclusions are supported by substantial evidence," as they are here, "they must be affirmed." *Verne W. v. Comm'r of Soc. Sec.*, 23-CV-6277-FPG, 2023 WL 8644415, at *4 (W.D.N.Y. Dec. 14, 2023) (internal quotation marks omitted). The Court finds that the ALJ properly considered Plaintiff's childcare activity and finds that the RFC determination was supported by substantial evidence.

### ii. Interaction with Others

Plaintiff argues that the ALJ's RFC determination that "[Plaintiff] can interact *occasionally* with the general public, coworkers, and supervisors" was not supported because the Disability Determination Service ("DDS"), which the ALJ relied on, determined that Plaintiff could handle only "*brief and superficial* contact with supervisors, coworkers, and the public." ECF No. 10-1 at 29-31 (emphasis added).

First, the premise that the ALJ had "primarily relied" on the DDS decision is flawed because the prior findings were only partially persuasive to the ALJ. *See id.* at 28. The ALJ explained that some of the DDS's assessments were not supported by the medical record. Tr. 20 For example, the ALJ found that the claim that Plaintiff had severe diabetes mellitus was not supported by the complete medical record, which showed that diabetes caused Plaintiff no more than minimal functional limitations. *Id.* Next, while there are colorable arguments that "occasional" is different from "brief and superficial," "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "An ALJ in a particular case may rationally conclude that 'brief and superficial' contact and 'occasional' contact are functionally equivalent." *Michael G. v. Comm'r of Soc. Sec.*, 23-CV-00767 EAW, 2024 WL 3616282, at *5 (W.D.N.Y. July 31, 2024); *see Ward v. Comm'r of Soc. Sec.*, No. 18-CV-1317-FPG, 2020 WL 3035850, at *3 (W.D.N.Y. June 5, 2020) (collecting cases) (finding "occasional" and "brief and superficial" contact as not inconsistent). Accordingly, the ALJ's RFC determination which limited Plaintiff to occasional interaction with the general public, coworkers, and supervisors is supported by substantial evidence.

### iii. Supportability and Consistency

Lastly, Plaintiff contends that the ALJ failed to properly explain the consistency and supportability factors with respect to the opinions of nurse practitioner Brown-Young and therapist Quinn. ECF No. 10-1 at 25-29. Under 20 C.F.R. § 416.920c(b)(2), the most important factors that an ALJ must consider in determining the persuasive value of a medical opinion are "supportability" and "consistency." The former pertains to the degree to which the medical source supports her opinion with "objective medical evidence and supporting explanations," while the latter pertains to the degree to which the opinion is consistent with "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 416.920c(c)(1), (2). An ALJ's failure to explain the supportability and consistency of a medical opinion in her decision constitutes a procedural error. *Loucks v. Kijakazi*, 2022 WL 2189293, at *2. However, if a searching review of the record assures the court that "the substance of the regulation was not traversed," a court may affirm the Commissioner's decision despite the error. *Id.* (internal quotation marks and bracket omitted). Thus, even if an ALJ fails to explicitly evaluate the consistency and supportability factors with respect to a particular medical opinion, remand is warranted only if the reviewing court is "unable to fathom the ALJ's rationale in relation to [the] evidence in the record." *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). By contrast, if the reviewing court can "adequately 'glean' how the ALJ [implicitly] weighed the consistency and supportability factors," remand is not justified because the procedural error is considered harmless. *Davidia B. v. Comm'r of Soc. Sec.*, 21-CV-384, 2023 WL 5361000, at *5 (W.D.N.Y. Aug. 22, 2023).

Here, the Court can adequately glean how the ALJ weighed the supportability and consistency factors in her assessment of Brown-Young's opinion. When it came to "consistency,"

the ALJ explicitly found that Brown-Young's "[r]ecent treatment notes [we]re consistent with the prior record." Tr. 19. The ALJ acknowledged Brown-Young's finding that despite Plaintiff experiencing several stressors such as the holidays, recent deaths, and family issues, she was still able to retain intact cognitive and social functioning. *Id.* When it came to supportability, the ALJ found that Brown-Young's suggestion that Plaintiff had marked difficulties in social functioning was "not *supported*" by Brown-Young's own mental status examination reports and treatment notes. Tr. 20 (emphasis added). For instance, the ALJ found that such marked difficulty was not supported by the medical record, including Brown-Young's own mental status examination reports and treatment notes. *Id.* Therefore, the Court concludes that the ALJ's decision properly considered the consistency and supportability factors as to Brown-Young's opinion.

Additionally, the Court can adequately glean how the ALJ weighed the supportability and consistency factors from therapist Quinn's medical opinion. Regarding consistency, the ALJ determined that Quinn's medical opinion finding that Plaintiff had no more than moderate limitations was "*consistent* with the contemporary treatment record including the behavioral health treatment notes suggesting intact cognitive functioning despite periodic depressive symptoms." *Id.* (emphasis added). While the ALJ does not explicitly use the word "supportability" in discussing Quinn's opinion, the ALJ provides enough information for this Court to adequately glean the ALJ's reasoning around supportability. For example, the ALJ explains that Quinn's report is vague and not presented in clear functional terms. *Id.* (comparing Quinn's opinion with Brown-Young's opinion). Further, the ALJ explains that she finds Quinn's statement that Plaintiff is "unable to work" neither valuable nor persuasive, as such statement is a question ultimately reserved for the Commissioner. *Id.* Thus, this Court can glean that the ALJ found little support for Quinn's opinion.

In sum, the Court can adequately glean how the ALJ weighed the supportability and consistency factors and thus any procedural error is considered harmless. *See Davidia B.*, 2023 WL 5361000, at *5.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 11, 2026
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York